# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVEN DE'ANGELO JOHNSON,

      Petitioner,

      v.                                 Case No. 11-CV-1137

MICHAEL BAENEN, Warden,
Green Bay Correctional Institution, and
J.B. VAN HOLLEN, Attorney General for
the State of Wisconsin,

      Respondents.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Steven De'Angelo Johnson ("Johnson"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is confined at the Green Bay Correctional Institution in the custody of the respondent, Michael Baenen (collectively with respondent J.B. Van Hollen, the "respondents"). The question presently before the Court is whether Johnson has shown that he satisfies one of the exceptions to procedural default. After careful consideration of the applicable facts and law, the Court determines that he has not. Accordingly, his claims are procedurally defaulted and must be dismissed.

## BACKGROUND

Johnson was convicted in Milwaukee County Case No. 07-CF-5497 of first-degree recklessly endangering safety, possession of a firearm by a felon, endangering safety by reckless use of a firearm, and carrying a concealed weapon. (Respondents' Br. in Supp. Mot. to Dismiss, Docket # 20, Ex. A.) He was sentenced on March 29, 2008 to 22 ½ years of imprisonment followed by 15 years extended

supervision. (*Id.*; Habeas Petition, Docket # 1 at 6.) Following his conviction, Johnson failed to timely file a motion for postconviction relief or notice of appeal. (Habeas Petition, Ex. D, Docket # 20-4 at 1.) When Johnson filed an untimely motion, the circuit court construed it as a collateral postconviction motion under Wis. Stat. § 974.06 and denied it on the merits. (*Id.*) Johnson filed a notice of appeal from that order in September 2009. (*Id.* at 1-2.)

While that appeal was pending and twenty months after Johnson filed the notice of appeal from the denial of his postconviction motion, Johnson filed a motion to reinstate his rights to pursue a direct appeal on April 21, 2011. (Docket # 20 at 4, Exs. B and C, Docket # 20-2 and 20-3.) The Wisconsin Court of Appeals denied this motion on May 12, 2011 and noted the appeal of the denial of his Wis. Stat. § 974.06 motion would continue. (Docket # 20-4 at 2.)

On December 16, 2011, Johnson filed the instant petition for a writ of habeas corpus in this Court. Subsequently, respondents filed a motion to dismiss arguing that Johnson had not yet exhausted his available state court remedies because Johnson's appeal to the Wisconsin Court of Appeals remained pending and awaiting decision. While the motion to dismiss was pending, the Wisconsin Court of Appeals affirmed Johnson's judgment of conviction on April 19, 2012. (*State v. Johnson*, App. No. 2009AP2444 (Wis. Ct. App. Apr. 19, 2012), Ans., Ex. I, Docket # 39-2.) Johnson then had 30 days to file a petition of review with the Wisconsin Supreme Court. Wis. Stat. § 808.10(1). The deadline was May 21, 2012. Johnson did not file a petition for review with the supreme court.

In this Court's July 10, 2012 order denying the respondent's motion to dismiss, the Court found by failing to timely file a petition for review, Johnson procedurally defaulted his federal claims in state court. Accordingly, Johnson was given an opportunity to show whether his failure to file a

- 2 -

petition for review with the supreme court was excused by one of the exceptions to procedural default. (Docket # 33 at 5-6.) Briefing on this issue has now been completed.

## ANALYSIS

*1.     Legal Standard*

28 U.S.C. § 2254 requires a district court to make two inquiries before considering a petition for habeas corpus on its merits:

> [W]hether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings. If the answer to either of these inquiries is 'no,' the petition is barred either for failure to exhaust state remedies or for a procedural default.

*Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992) (quoting *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)). The principles of comity underlying the exhaustion doctrine require the petitioner to give the state courts a "full and fair opportunity to resolve constitutional claims" before raising those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To comply with this requirement, the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*; *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). For a Wisconsin prisoner, this means that he must assert each of his claims in a petition for review to the Wisconsin Supreme Court. *Moore v. Casperson*, 345 F.3d 474, 485-86 (7th Cir. 2003).

Under Wisconsin law, a criminal defendant has a right to pursue a postconviction motion and a direct appeal from a conviction under Wis. Stat. § 974.02. After the time for direct appeal or postconviction remedy under § 974.02 has expired, the defendant may seek collateral postconviction relief from a conviction by motion brought pursuant to Wis. Stat. § 974.06, if his claims raise jurisdictional issues or questions of violation of federal constitutional rights.

- 3 -

In this case, the record is clear that after his conviction, Johnson did not file a direct appeal under § 974.02. Instead, when he untimely filed a motion, the circuit court construed it as a collateral postconviction action under § 974.06, which the circuit court ultimately denied on the merits. Johnson did appeal the denial of his collateral postconviction motion to the Wisconsin Court of Appeals. But he did not file a petition for review with the Wisconsin Supreme Court. For habeas review, this constitutes default. Consequently, the only question before this Court is whether there is good cause to excuse Johnson's failure to file a petition to review the denial of his collateral postconviction motion to the Wisconsin Supreme Court.[1]

Johnson's procedural default will be excused if he is able to demonstrate cause for the default and actual prejudice as a result of the failure, or alternatively demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). The cause prong of the cause and prejudice inquiry may be satisfied upon a showing that some external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented the petitioner from avoiding procedural default. *Id.* at 488. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

2.    *Cause and Prejudice*

To show cause, Johnson asserts he had drafted and prepared to timely file his petition for review to the Wisconsin Supreme Court; however, the Green Bay Correctional Institution's Business

---

[1] Johnson also argues that he is able to demonstrate "cause" and "prejudice" for the default of his "direct appeal." (Petitioner's Br., Docket # 46 at 2.) As previously stated, Johnson did not timely file a direct appeal pursuant to Wis. Stat. § 974.02. When he filed a late motion, the trial court construed the untimely motion he filed as a Wis. Stat. § 974.06 motion, which preserved his right to challenge federal constitutional claims. Thus, only his appeal pursuant to Wis. Stat. § 974.06 is at issue in this habeas proceeding.

- 4 -

Office improperly refused to grant him a legal loan to make the appropriate number of copies and pay for postage of the petition. (Petitioner's Br., Docket # 46 at 21-22.) The Wisconsin Department of Corrections legal loan program allows inmates without sufficient funds in their general account to borrow money from their institutions to pay for paper, photocopies, or postage. Wis. Admin. Code DOC § 309.51(1). The record indicates Johnson's request for a legal loan was denied because during the relevant time period he had deposits of $55.00 and canteen expenditures of $17.90, primarily for junk food. (Petitioner's Br, Attach. 1, Docket # 46-1 at 4.) Johnson argues this is an improper denial of a legal loan because his legal need did not arise until April 23, 2012, when he received the court of appeals' adverse decision and the canteen purchases were made well before this date. (Petitioner's Br., Docket # 46 at 22.)

Though the Supreme Court has not identified with precision exactly what constitutes cause to excuse a procedural default, generally a petitioner must show that something external to him, that is, out of his control, caused the procedural default. *See Morrison v. Duckworth*, 898 F.2d 1298, 1301 (7th Cir. 1990) (finding that a petitioner can establish cause by showing some objective factor external to the defense impeded efforts to comply with the State's procedural rules, some examples of external impediments being "factual or legal defenses not originally available or interference by officials that makes compliance with state procedures impracticable"); *Ivy* v. *Caspari*, 173 F.3d 1136, 1140-41 (8th Cir. 1999). For example in *Normand v. McAninch*, No. 98-347, 2000 U.S. App. LEXIS 6764 (6th Cir. Apr. 6, 2000) (unpublished), the Ohio Court of Appeals required the filing of four briefs. The petitioner was only able to file one brief which he filed along with an affidavit of indigency requesting waiver of the additional briefs. The Ohio Court of Appeals denied the motion and dismissed his appeal. In federal court, the petitioner argued there was cause for his default because he was

- 5 -

financially unable to file the requisite number of copies of his brief. The Sixth Circuit found there was no indication the Ohio state courts failed to properly evaluate the petitioner's indigency claim. Although the Sixth Circuit sympathized with the petitioner's claims of indigency, the court found it was not "an external cause." *Id.* at *17.

Too, in the context of alleged official interference, to satisfy cause, the petitioner must generally show not only events external to his control, but some action or inaction on the part of the government authorities which impeded his compliance with the procedural rule. *See, e.g.*, *Ivy*, 173 F.3d at 1141; *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) (finding "cause" for procedural default where petitioner timely delivered his application for leave to appeal to the Michigan Supreme Court and due to the prison official's inaction, the application arrived late). For example, in *Ivy*, the petitioner signed a postconviction motion before a notary public, placed the motion and two copies in an envelope addressed to the circuit court, affixed the proper postage, and deposited the envelope in the prison mail system. However, the prison never mailed the motion. 173 F.3d at 1140. On habeas review, the district court found, and the Eight Circuit affirmed, that the nondelivery of the mail constituted cause because absent the external interference (the prison's failure to mail the motion), the petitioner's motion would have been timely. "[I]f it is required that cause be attributable to the State, we conclude that Ivy has made such a showing, for it was incumbent upon the State to ensure that Ivy's motion was promptly put into the regular stream of outgoing mail." *Id.* 1141. The Court also emphasized that the nondelivery was not the result of the petitioner's lack of attention to the filing deadlines.

Here, Johnson has not shown, and the record does not support, that Johnson's lack of funds or inability to get a loan to file his petition for review with the Wisconsin Supreme Court was due

- 6 -

to external causes out of his control. In denying the loan, the Business Office informed Johnson as follows:

> A review of your income and expenditures shows that you had deposits of $55.00 and canteen expenditures of $17.90 over the last 60 days. The canteen purchases were primarily junk food. These funds could and should have been used to meet your legal needs.

> We will reconsider your request to reinstate your legal loan at a future date. In the meantime, you may take advantage of the free weekly envelope/mailing for those who qualify.

(Docket # 46-1 at 4.) In other words, the Business Office informed Johnson that it was his responsibility to manage and budget his finances to pursue his lawsuit. The Seventh Circuit has stated as much. The Seventh Circuit noted that the Department of Corrections Legal loan program "is not intended for the funding of prisoners' suits." *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003). Moreover, the Seventh Circuit confirmed that there is no constitutional entitlement to subsidy to prosecute a civil suit. *Id.* (citing *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002)). To prosecute a civil suit, a prisoner, like any other civil litigant, must decide which of his legal actions is important enough to fund. *Id.* Accordingly, here, any impediment to paying the costs associated with copying and mailing the petition for review before the Wisconsin Supreme Court was not "external to the defense" but within the control of how the defense [Johnson] managed his own finances.

Nor has Johnson shown any interference on the part of the Business Office. As stated earlier, Johnson had no legal entitlement to a loan. It was wholly within the Department of Corrections' authority to grant or deny the loan, so the Court cannot conclude that the denial of the loan in itself was interference. Moreover, Johnson offers no evidence that the loan was maliciously denied for the purpose of denying him access to the courts. The record shows that Johnson previously received legal loans and that the Business Office responded to Johnson's inquiry regarding the denial of the loan

- 7 -

in a timely manner. Johnson submitted a letter on May 14, 2012 appealing the denial of the loan and the Business Office responded the next day on May 15, 2012, prior to Johnson's deadline for filing his petition with the state supreme court. (Docket # 46-1 at 3-4.)

Additionally, unlike in *Ivy*, this is not a case where the State officials failed to do something that the State was obligated to do. Recall in *Ivy* the petitioner addressed the motion to the court with the proper postage but the State never mailed it. In this case, unlike in *Ivy*, the State did not fail to mail properly posted correspondence. The State was not obligated to mail Johnson's brief without the proper postage or to provide the proper postage. Though the Court also sympathesizes with Johnson, his nonfiling of his petition for review to the supreme court cannot be attributed to the actions (or inactions) of the State.

Finally, to the extent Johnson argues that the denial of the loan was arbitrary and therefore should satisfy good cause, the Court disagrees. Johnson correctly points out that although he had deposits of $55 during the relevant time, he also had deductions to pay off prior loans and DNA surcharges and that most of his canteen purchases were made before the adverse decision from the court of appeals. These facts notwithstanding, the Business Office provided a rational basis for the denial of the loan. Even given Johnson's expenditures and withholdings, his prison trust account statement shows a balance of $25.80 during the relevant time, thus not leaving him completely without funds. (Docket # 46-1 at 6.) The fact Johnson had previously been approved for loans demonstrates that the Business Office is not categorically adverse to giving him loans. Rather, the Business Office declined at that time to give him a loan because of his deposits and expenditures. However, the Business Office also stated it would reconsider his legal loan request at a later date and

- 8 -

informed him of the opportunity to take advantage of the free weekly envelope/mailing for those who qualify. (*Id.* at 4.)

For these reasons, the Court concludes that Johnson has failed to show cause for his procedural default. Thus, it is not necessary for this Court to determine whether he was prejudiced. *See Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir. 2001) (finding a petitioner must show both cause and prejudice).

### 3. *Fundamental Miscarriage of Justice*

Although Johnson failed to establish cause and prejudice, he can overcome the procedural default if he can show that the failure to review his claims would result in a fundamental miscarriage of justice. A "fundamental miscarriage of justice" is shown where "'a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . .'" *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999) (quoting *Murray*, 477 U.S. at 495-96). The fundamental miscarriage of justice exception applies only in "extremely rare" and "extraordinary case[s]." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez*, 193 F.3d at 917.

To meet this burden, Johnson contends he is actually innocent of two of the four counts of conviction: the count of first-degree recklessly endangering safety and the count of endangering safety by reckless use of a firearm. (Petitioner's Br., Docket # 46 at 27-28.) As to the first-degree recklessly endangering safety, Johnson argues that his newly discovered evidence is Jury Instruction 990 which shows the meaning of the "while armed" element. (*Id.* at 27.) With this proper instruction, Johnson argues, no reasonable jury could have convicted him of that charge. As to the endangering safety by

- 9 -

reckless use of a firearm, Johnson argues a newly discovered state crime lab ballistic report shows that the State had "no ballistic evidence to establish the foundation that the projectile in question" had been discharged. (*Id.* at 28.)

Johnson falls woefully short of establishing that he is "actually innocent." "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (citing *Schlup*, 513 U.S. at 324). The evidence must be "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

As to the actual innocence claim on the first -degree recklessly endangering safety, other than the conclusory statement that the jury instruction would have changed the outcome of the verdict, Johnson makes no further elaboration. However, the record shows that the charge was based upon the testimony of the two victims, husband and wife, Willie Brown and Lynette Brown. (*State v. Johnson*, App. No. 2009AP2444 (Wis. Ct. App. Apr. 19, 2012), Docket # 39-2 at 2-3.) The Browns testified that Johnson (who was the boyfriend of Lynette Brown's sister) got into an argument with them inside a Family Dollar Store. (Docket # 39-2 at 9.) According to the Browns, after the altercation inside the store, Johnson told them that he had something for them. (*Id.*) Johnson then left the store, went to his car, and came back toward the Browns' car pointing a gun at them. (*Id.* at 10.) The Browns testified that Johnson then discharged the firearm into the Browns' car, putting a hole through a door of the car and cracking the windshield. (*Id.* at 11.) One of the investigating detectives testified that he observed a bullet in the front passenger's door and a fired bullet lying on

- 10 -

the dashboard. (*Id.*) The Browns' testimony was corroborated by surveillance video. (*Id.* at 10.) Johnson does not attempt to show and does not show that despite this evidence, with the admission of this newly found jury instruction, that it is more likely than not that no reasonable juror would have convicted him.

The argument regarding the newly discovered ballistic evidence suffers a similar fate. Other than Johnson's conclusory statement that the State had no ballistic evidence, Johnson does not show that in the face of the eyewitnesses' testimonies how this new ballistic report would more likely than not alter the jury's verdict.

Johnson has therefore failed to show that enforcing the default would lead to a fundamental miscarriage of justice.

### 4. Johnson's Alternate Arguments

For the sake of completeness, the Court also addresses Johnson's alternate arguments. First, Johnson contends that his petition for review was "filed" on the day he delivered it to the proper institutional authorities for mailing. (Petitioner's Br., Docket # 46 at 2.) He appears to be invoking the prison mailbox rule. However, this rule is inapplicable to Johnson's case. To begin, Wisconsin has declined to adopt a "prison mailbox rule," instead adopting a "tolling" rule in which the 30 day deadline for receipt by the Wisconsin Supreme Court of a petition for review is tolled on the date that a *pro se* prisoner delivers a correctly addressed petition to the proper prison authorities for mailing. *State ex rel. Nichols v. Litscher*, 2001 WI 119, ¶ 32, 247 Wis. 2d 1013, 635 N.W.2d 292. This contemplates the supreme court actually receiving the document. Johnson never placed the proper postage on his document. Also, the supreme court never received a petition for review from Johnson. Thus, the tolling rule is not applicable.

- 11 -

Next, Johnson argues that he did not procedurally default his claims because his habeas petition is not before this Court pursuant to either a direct appeal under Wis. Stat. § 974.02 or a collateral appeal under Wis. Stat. § 974.06. He argues that he appealed his conviction to the court of appeals through two motions for summary disposition pursuant to Wis. Stat. § 809.21 and appealed those decisions to the supreme court through a petition for a supervisory writ pursuant to Wis. Stat. § 809.71. (Petitioner's Br., Docket # 46 at 18.) Johnson argues he can properly appeal his conviction through Wis. Stat. § 809.21, as well as through a direct appeal pursuant to Wis. Stat. § 974.02. (Obj. and Request for Reconsideration, Docket # 34 at 2.)

Johnson misunderstands the purpose of these two statutes. Wis. Stat. § 809.21 provides that the "court upon its own motion or upon the motion of a party may dispose of an appeal summarily" and a "party may file at any time a motion for summary disposition of an appeal." This statute is not an alternative to filing a direct appeal under Wis. Stat. § 974.02; rather, it provides a procedure for disposing of a pending appeal. In denying one of Johnson's motions for summary disposition, the court of appeals stated that "Johnson's motion largely addresses the merits of his appeal. We direct him to raise these arguments in his appellant's brief," and extended the deadline for Johnson to file his brief. (Habeas Petition, Ex. 2, Docket # 1-3 at 6.) Thus, the court of appeals explained to Johnson that the proper vehicle for addressing the merits of his appeal was in his appellate brief.

Wis. Stat. § 809.71 provides a procedure in which the supreme court may exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body. Contrary to Johnson's contention, it does not provide an alternative method for filing a petition for review to the Wisconsin Supreme Court appealing the court of appeals' denial of relief for a direct appeal or for appealing the denial of relief under Wis. Stat. § 974.06.

- 12 -

As such, Johnson's filing of motions for summary disposition of his appeal and petitions for supervisory writs do not save him from the application of procedural default. It does not excuse Johnson's failure to appeal the denial of his collateral postconviction motion to the Wisconsin Supreme Court.

Because Johnson failed to "fairly present" his claims to the Wisconsin Supreme Court and because the opportunity to raise the claims in the state court has passed, Johnson's claims have been procedurally defaulted. Johnson does not show sufficient "cause" for his default, or, alternatively, that he is actually innocent. Therefore, this Court may not further consider the merits of Johnson's habeas petition.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When, as here, the case is resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Section 2253

- 13 -

mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485. Each component of the § 2253(c) showing is part of a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.*

For the reasons set forth in this decision denying Johnson's habeas petition, Johnson's claim does not warrant a certificate of appealability. On the facts presented here, jurists of reason would not find it debatable that the denial of a legal loan did not constitute "cause" to excuse Johnson's procedural default. Johnson has not shown that his lack of funds or inability to get a loan to file his petition for review with the Wisconsin Supreme Court was due to external causes out of his control. Johnson was not entitled to a legal loan and has not shown the Business Office wrongfully denied his loan or otherwise interfered with his ability to file a petition for review. As such, the Court will deny Johnson a certificate of appealability.

Of course, Johnson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of March, 2013.

BY THE COURT

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge